Ms. Geddes, you could proceed, please. Thank you, Judge. It's my privilege to represent Johnny Napier here this morning. He has two sentencing issues before the Court. One concerns restitution. I'll address that in a moment. The second concerns the imposition of two special conditions through the vehicle of a written judgment. Mr. Napier was sentenced on June 24th of last year. On June 30th, Judge Fitzgerald issued a written judgment in which he imposed two special conditions of supervised release, conditions 2 and 6. Those conditions are that Mr. Napier was ordered to participate in a drug treatment program, and he was ordered to participate in a mental health evaluation, particularly with respect to gambling and anger management issues. So the question presented with respect to this action is whether or not if a district court fails to mention specific special conditions of supervised release of sentencing, will its subsequent inclusion in the written judgment create a conflict which requires amendment of the written judgment so as to conform to the oral pronouncement? And the answer is one prescribed by Rule 43A3 and by the circuit's cases, Munoz-De La Rosa, Hicks, Napier. I'm not sure if I'm saying that right. And those cases require that the special conditions in this case 2 and 6 must be struck from the written judgment because they conflict with the oral sentence pronounced. And this is because this Court has clearly ruled that sentence is pronounced at the time of the oral pronouncement when a defendant is present in court. And because the special conditions in this case imposed were neither replicative of other of standard or mandatory conditions, which Mr. Napier could have at least arguably have anticipated, given that the Court said that he'd be placed on supervised release. Kennedy. Were those cases ones where the Court simply said nothing and then a condition turned up in the written sentence? Those were cases where there was – I believe that they were, Your Honor, in my record. What we have here is the judge was quite open. I mean, he said, look, there are going to be some additional conditions. I'm not going to try to say right now what all of them are. You'll find them in the written thing that we get. I wonder if that – I mean, if in view of that language you can really say there's a conflict. I can see where you might say it's an ambiguous sentence, but I don't know if there's a conflict or not. Well, the government has cited two Second and Fifth Circuit cases which have addressed this issue head on, specifically in this context where the Court has failed to articulate specific conditions that said that the defendant was placed on supervised release and would be subject to conditions. And those cases have made a distinction between, I would say, two classes of special conditions. If they're replicative of other mandatory or standard conditions preprinted on a judgment form well known to everybody, then they're not going to be struck. If they are simply articulating basic administrative matters relating to the administration of supervised release, such as report within 72 hours after release from jail, you're going to be supervised in the district where you reside. And the Second and Fifth Circuit have said that those are clarifying and not conflicting actions taken by the Court in the written judgment. But this would be conflicting because there isn't anything to suggest that this is related to basic administration and imposes an additional affirmative duty, a burden on the defendant, which is different from anything that was articulated by the Court previously. And any burdensome requirement added after the fact when a defendant isn't present in a written judgment has to be removed. Kennedy, did the defendant waive his point by not requesting a postponement of the sentencing hearing until the judge had made up his mind as to what special conditions he was going to impose so he could hear them? Well, what happened in this case, Your Honor, was that there was a special condition that was mentioned in court, and that had to do with the imposition of the finding that was required to impose the three drug tests. And that was a specific finding requested by the probation officer and a special condition that was articulated on the record in court in the presence of the defendant. But there wasn't any mention of these two particular special conditions. And as a matter of fact, after the judge filed the written judgment, the defender Can you point it out that the judge made some mention of some conditions he would add? He said there will be some conditions of supervised release. All right. At that point, should the defendant have said, well, defense attorney, judge, why don't we continue the sentencing hearing until you know what those conditions are going to be, and we can learn about them and discuss them in the presence of the defendant? And his failure to do that, does that constitute a waiver of the point? No, I don't believe it does, because I think what it anticipates, what other courts  are going to, don't necessarily, the other circuits have ruled on this, that don't necessarily require that they be articulated on the record beforehand. What the defender in this case specifically did, Your Honor, was that she moved to reconsider on the record, that's at excerpt of record 271, and she said, because this written judgment and the addition of these conditions conflicts with the oral judgment. So she specifically did ask the court to consider the conflict between the written and oral pronouncement, and the court denied her motion to reconsider. So I don't believe it was waived. There is a second issue here. I'm watching the time, so I'm going to make mention of it and take any questions that you may have regarding that issue. And that has to do with the imposition of restitution for acts other than those reflected in counts of conviction. Mr. Napier pled guilty to count 3. In exchange for that plea of guilty, the government dismissed counts 1 and 2. There was no agreement. There was no agreement with respect to restitution. He's assuming restitution for acts other than in the count of conviction. This issue is clearly controlled by reference to the Mandatory Victim Restitution Act, 18 U.S.C. 3663a, which says that restitution cannot be imposed for acts other than those contained in the count of conviction except for certain circumstances which are not present here. It also allows a defendant to affirmatively agree to take on restitution and make restitution for other acts, but no such agreement can be found in the face of this record. Therefore, the Court erred in imposing restitution for the acts contained in counts 1 and 2, which were dismissed. Was there an objection to that at the district court? What there was was vigorous argument as to those acts being criminal or non-criminal. There was spirited argument and presentation of much evidence, all of which is presented in the excerpt of record, which argued that restitution should be wrongly imposed. But you did not specifically argue that the court was without statutory authority to impose the restitution. What's the standard then for that? Is that one of those things that, if it wasn't raised at the district court, that we normally don't consider it on appeal, but we can in extraordinary cases? Or another, are we under that rule, is what I'm asking. Well, I think the matter is one of settled law. The parties were – apparently were operating under some impression. I mean, I don't know what to assume for their actions. Mr. Cooper is here, but Ms. Hayden isn't. But I think you assume that they were under a mistaken impression as to what the law allowed and the law clearly does not allow. It's outside that the court had no statutory authority to impose that. So they may have been mistaken as to the governing law. But I don't think you can say that where this issue is decided by reference to law alone, it was waived by the defendant. There is an affirmative requirement in the statute as to the circumstances in which a defendant can be required to provide restitution outside of his plea agreement. It clearly was not in the plea agreement. There was no plea agreement. It clearly was not required by the terms of his plea, and yet it was imposed. I think the only – the only resort that this Court has is to strike it. I'm going to reserve my few seconds. Thank you. We'll probably round you up to a minute so you can – accordingly. Good morning. I'm Stephen Cooper for the United States. Mr. Cooper. With regard to the two issues that are before the Court, I think we've briefed them very well. I'd be happy to take questions. I do want to emphasize a couple of points. And first of all, we are taking a new step. We're suggesting that a new step be taken by this Court with regard to the issue of the conditions of supervised release. But that is only a very small step and a very logical step following from already the decisions that have been made by this Court, particularly the one cited by the defense, which is Lopez. In Lopez, it was – there was a condition, a special condition of supervised release for the same as the second one in this case, which was for mental evaluation and treatment without any prior notice having been given to either of the parties on the record at the time. And this Court stated in Lopez that this was a, quote, routine condition and that all defendants are already alerted to it because of the fact that the record had some factual support for that kind of a condition and primarily that this was a listed recommended condition the guideline recommended conditions under 5D1.D5, whatever that section is that we cited. And it's – particularly it's 5D1.3D. Those are the special conditions that are considered – that are recommended by the guidelines. Is it your position, sir, that a person who pleads guilty to stealing money from the government should know that a standard condition in his case will include drug treatment and psychiatric treatment? Is that a standard condition? Not for that offense, but for this record. The man's record was one that showed drug convictions and the fact that he had trafficked in drugs by selling drugs 20 years before. Well, not quite, but yes, it was a while back. And what you're saying is since he'd been convicted of a drug trafficking offense 20 – many years before, he should know that he's going to be subject to drug treatment as therapy for him not using drugs? He was on notice by virtue of not only that conviction, but the series of events underlying that conviction. And following it, the pre-sentence report indicated that he was known to be on some kind of substance. Now, the problem is – this is in paragraph 83 of the pre-sentence report – didn't indicate when that was, but one of his closest friends, his uncle, George Taylor, indicated that there was a time when his nephew, Mr. Napier, was known to be on some kind of substance, was abusing some kind of substance, but he excluded the possibility of alcohol. He said he was not a drinker. And in addition, the drug activities that the defendant was convicted for were accompanied by admissions on his part that he was engaged in a whole series of drug sales. He was – he was detected making four particular drug sales underlying the conviction at hand, but he went on further to admit that he was selling drugs to support his – or buying drugs to support his wife's habit in selling them whenever he needed money, was his statement. But the drug treatment program was not to change his way of selling drugs. It was to stop him from taking drugs. Was there any indication that he had a history of taking drugs? Yes. Well, like I said, that was the – the report of his friend, George Taylor, who indicated that he believed that he was on some kind of – he was abusing some kind of substance. I think that's the only one that I can find, aside from the inference that can be drawn from the fact of his – Some kind of substance because he was acting funny or acting strange? Well, I believe that the – I mean, isn't that kind of thin? If you're taking these points separately, each one of them is thin. But on this record, the court did not abuse its discretion in taking a precautionary step. Are there any other indications that this man ever was using drugs other than George Taylor saying, I think he was on something, but I can't tell you what it was? And that he excluded that he was a drinker. He said he wasn't. And was not drinking. Right. And I think coupled with the fact that he admitted that he was selling to support his wife's habit, and I think that the district court would have been perhaps somewhat unrealistic if it took that completely at face value, that he was selling to support his wife's habit. Not his, his wife's. And when you put it together with everything that's in the picture, we would have to find that it was an abuse of discretion. I would say certainly the court has to have some leeway in deciding whether wisdom says that it's a good thing to at least test him out and find out if he needs treatment. And of course, I think that's the way it was put, that he was on drug testing. And as far as the mental treatment goes, you say Lopez says that mental examinations without prior notice is simply routine. We've got jurisprudence on that. And everybody who hears the word special conditions figures that sooner or later he's going to have to take mental therapy. Well, it depends on the presence of supporting facts in the record for it. What are the facts indicating that this man is in need of mental therapy? Well, I believe that, I think he said he had been previously required to take some anger management treatment. He had a rather continuing problem with domestic assault, which was of such a violent nature that he was practically choking his victim on each of these occasions. Once it was his own son. Other times it would be the woman that he was living with at the time. You know, if there are questions about this, it seems that instead of thrashing out on appeal the question whether or not somewhere in the record there's something to support these special conditions, it would be better to say the judge had to impose them in open court at sentencing. And then if the defendant thinks they're inappropriate, there's time to object and argue about it and everything else, instead of just having it postponed and then come in order. And then we can sit and argue about whether the record really supports this and whether the objection was waived and all that stuff. Well, there's no question that the better practice is to say it in open court. I don't have any problem with that. The question is whether it's permissible to do it the other way. The only difference between what happened in Lopez and what happened here, so far as the mental evaluation requirement is concerned, is that it was pronounced in open court, but that was after the time that the parties were through arguing. There was no more argument. It was at the end. Okay, we're all done. Now I'm going to pronounce sentence. Sentence is pronounced, and you get to the tail end where the supervised release conditions are, and up comes this one. That's the way it was in Lopez. And the only difference between that and here is that it came up in the written judgment a few days later. But as far as the defendant's being prepared for it is concerned, the two cases are I have a question on the restitution. What's the government's best argument, in your view, as to how there can be restitution on charges to which the appellant didn't plead guilty? In other words, how can there be charges on how can there be restitution on the transaction that was dropped where the defendant didn't plead? Because the agreement of the parties was that we would litigate the issue of the loss, both for offense level and restitution purposes, those two issues. We would litigate that in a sentencing context where the defendant didn't have to face criminal liability for that step, for those two counts, rather than litigating it in front of a jury on whether he was criminally liable as well. That was a bargain that was made. The government gave up holding the defendant criminally liable for those two counts. And the defense says, all right, well, then we'll litigate everything that would have been litigated on that. But in a sentencing context, that was the essence of it. Now, that is Is that clear in the record? That's clear from several things. But the most, the three principal places are page 4 of the addendum to the pre-sentence report, where the defense objects to both the offense level in paragraph 52 as being influenced by the loss on the first two counts and says it shouldn't be because it should be offset for value of services rendered on those two counts. And the restitution, paragraph 128, again, says restitution should be set off by the value of services rendered on the first two counts. That was the only objection made. Counsel, the transcript of the sentencing has the government saying the facts underlying counts 1 and 2 are still before the court for consideration in sentencing  The court, do you understand that, sir? The defendant? Yes, sir. That's correct. I'm sure we would have and should have said it better, more precisely. But the record that the defense has left is crystal clear. If you go to excerpts of the record, page 7, the defendant's sentencing statement, Mr. Napier, admits the loss on count 3. But, however, this is a quote. Mr. Napier contends that the funds in counts 1 and 2, which are now included as relevant conduct, were used for the intended purpose and, therefore, should not be contained in the loss amount or the restitution amount. It's the offset theory. It's the only theory they ever brought up. And if you go to page 233 of the excerpts of record, again, the defendant says the same thing. The government got the benefit of its bargain on counts 1 and 2, and, therefore, the losses there should not be counted in the loss amount, that's offense level, nor should they be included in the restitution amount because to do so would unjustly enrich the government. That's the only theory that was ever presented by the defense. Thank you, Mr. Cooper. Thank you. We've gone over time, but our questions took you over time, so we appreciate the response. Thank you. Ms. Geddes, because we went over time there, we'll add another minute to your rebuttal here. Thank you. I have two points. One is regarding the Lopez case. It is wholly distinguishable from the facts presented here. Lopez presented the argument that under Burns, the defendant should have received notice prior to the imposition of sentence of the court's intention to add the requirement of treatment as a special condition. This Court decided Lopez on the basis that it did not consider the imposition of special conditions of this ilk to be comparable to a court's intention to depart upward from a guideline sentence, and held that Burns did not necessarily apply in that circumstance. But it also — it's not clear whether or not that holding, though, is dicta, because the Court basically determined from a close review of the record that in Lopez, the defendant did have effective notice and opportunity to argue against the court's decision to impose a special condition, because there's a — there were two aspects to it. I think the Court said that it would impose the requirement of mental health treatment. There was then an opportunity for the defense attorney in that case to respond. And what he or she said was, well, Your Honor, with respect to the imposition of the requirement of mental health treatment, do we — can the defendant preserve confidentiality in the course of that treatment relationship? And so that was specifically discussed and objection made, heard, decided. And so I think that in Lopez, this Court effectively found that an opportunity had in fact been provided to the defendant, although there is also the statement that Burns does not apply. That's not the circumstance clearly presented here. There was no notice. There was no opportunity. There was a post hoc addition of a burdensome requirement upon Mr. Napier. With respect to the other matter, just by reference to the record, Mr. Napier's prior conviction for distribution was in 1988. He was sentenced in 2005. There had been no drug involvement reported by anyone of Mr. Napier. What the uncle said, this is — by the way, Mr. Napier was 47 at the time of his sentencing and his uncle was contacted for the purposes of verifying family information. And what Mr. Taylor said was that he thought that at one — he wondered at one point whether or not his nephew might have been using drugs, because he acted funny and he had been staying out late. He acted strange at work and he had been staying out late and it made him wonder. And that is the nature of the speculative evidence upon which the Court apparently relied post-sentencing to determine to apply that additional condition. I don't know if the Court has any other questions. I have a question. Yes, Your Honor. The restitution. Yes. What is your response to the government's argument that it was agreed by the defense with the prosecution to, you know, to permit the quantity on the first transaction to come in under restitution? Well, we've vigorously contested the existence of any agreement in that effect. And we have done that by reference to the requirement that the government, who, of course, is responsible for the creation and execution of plea agreements and presumably would be responsible for similarly effectuating the terms of an agreement in this case, did nothing to insert anywhere into the record any specific requirement that the defendant take on the burden of restitution with respect to those two counts. So there certainly is nothing explicit, and I would argue not even implied in the record, that he was affirmatively agreeing to take it on. Of course, I would concede that Ms. Hayden was apparently forgetful of the fact that the Court had no statutory ability to impose restitution with respect to the actions that are – that were in counts 1 and 2. There was no objection asserted by her. But you're saying that the record doesn't show it was an agreement. No. And it's only – the MDRA makes clear that it's only where there is an express agreement between the parties that the defendant will assume that responsibility can there be authority, statutory authority, for the imposition of that burden. Okay. Well, I've taken you over your time. Thank you very much. Thank you. I thank Mr. Cooper and Ms. Geddes. And U.S. v. Napier shall be submitted. The last case on our docket, U.S. v. Robert Dale Henry, is submitted on the briefs. So we will adjourn. All rise. This Court for this session stands adjourned. Thank you. Thank you.
judges: Canby, Gould, Bea